UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHARMERICA CORPORATION, ET AL., <br><br> PLAINTIFFS <br><br> V. <br><br> ADVANCED HEALTHCARE SOLUTIONS, LLC, ET AL., <br><br> DEFENDANTS. | CIVIL ACTION NO. 1:10-CV-00349 <br><br> **ELECTRONICALLY FILED** |

\* \* \* \* \* \* \* \*

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs, PharMerica Corporation, PharMerica Long-Term Care, Inc., PharMerica Mountain, Inc. and Pharmacy Corporation of America (collectively "PharMerica"), submit the following response in opposition to the motion to dismiss or, in the alternative, transfer venue filed by defendants, MedWise GPO, Inc. ("MedWise), and C. Scott Russell ("Russell") (collectively "Defendants").[1]  The motion should be denied because the Defendants intentionally interfered with PharMerica's contractual relationships by knowingly inducing its customers to wrongfully breach their agreements – predicated on direct contacts and communications with PharMerica's customers, including an *Illinois facility* which caused injury to PharMerica's pharmacy *located in Illinois*.

### SUMMARY AND PROCEDURAL HISTORY

Defendants, led by a former PharMerica employee having familiarity with PharMerica's business and agreements, have intentionally urged PharMerica's customers to wrongfully breach and terminate their Pharmaceutical Services Agreements ("Agreements"). (Complaint ¶¶ 1 and

---

[1] Defendants' motion was filed on behalf of the MedWise Defendants only because as of February 16, 2010, they were the only defendants who had been served. At the time of this filing, however, Advanced Healthcare Solutions ("AHS") has also been served. PharMerica is still trying to serve Andrew S. Lenick ("Lenick"). PharMerica's jurisdictional analysis applies to all Defendants, including Lenick.

30.) Defendants took these improper actions with the full knowledge that their actions would cause financial injury to pharmacies operated by PharMerica, that PharMerica's business relationships with its customers would be harmed and that PharMerica would suffer the loss of contractual revenue as a result. Defendants instructed PharMerica's customers, including The Assisi Health Care Center of Clare Oaks ("Clare Oaks") in Barlett, Illinois, to breach their agreements by terminating them prior to expiration without cause.

PharMerica initially filed suit against Defendants in Kentucky state court in May 2009 and Defendants removed it to the United States District Court for the Western District of Kentucky, Louisville Division (Civil Action No. 3:09-CV-397-H). The court granted Defendants' motion to dismiss *without prejudice* for lack of personal jurisdiction in Kentucky. In its opinion, the court found that "Defendants aimed their actions at CRSA [Clare Oaks] and The Village, Illinois and Tennessee corporations respectively. The focus of the actions in this case, therefore, was Illinois and Tennessee, not Kentucky." (October 6, 2009 Order at p. 4 (emphasis added), attached as Exhibit 1.)

Based upon the Kentucky court's ruling, PharMerica re-filed its action in Illinois. Clare Oaks in Barlett, Illinois currently owes PharMerica $294,362.41 for medicine and pharmacy services provided under the Agreement Clare Oaks purported to terminate pursuant to the Defendants' direction. (Affidavit of Paul Coletti at ¶ 7, attached as Exhibit 2.) Further, as the affidavit of Susan G. Polier, MS LHNA, the former Clare Oaks Administrator, demonstrates, Defendants have significant contacts with Illinois that allow this Court to exercise jurisdiction – these include, but are not limited to, soliciting business from Clare Oaks, improperly instructing Clare Oaks to breach the Agreement by terminating it prior to expiration without cause, and inducing Clare Oaks to enter into a contract for Defendants' services. (*See, e.g.*, Affidavit of

Susan G. Polier, MS LHNA ("Polier Affidavit") at ¶¶ 4-9, Ex. 3.) The record establishes that Defendants have more than sufficient contact with Illinois to support both personal jurisdiction and venue. Finally, Defendants' additional argument that the complaint fails to state a claim for tortious interference is unsupported by a review of the complaint and controlling precedent.

## STATEMENT OF FACTS

Defendants have reached out of Arizona and caused PharMerica's customers not to pay amounts due and improperly terminate their agreements – all in exchange for the payment of a hefty consulting fee. (*See* Polier Affidavit at ¶ 5, Ex. 3; Exhibit B to Complaint; Affidavit of Gerald Liles ("Liles Affidavit") at ¶ 9, attached as Exhibit 4.) Defendants have engaged in a coordinated effort led by Russell, a former PharMerica General Manager, who has some familiarity with PharMerica's operations and contracts.[2] As AHS/MedWise, Defendants solicit PharMerica's existing customers on the premise of providing consulting, adjudication and billing services to healthcare facilities like Clare Oaks. They attempted to inject themselves into PharMerica's business relations with its customers as a "third-party adjudicator" who would cause these customers to breach the terms of their agreements by seeking to unilaterally reduce or eliminate the amounts PharMerica is entitled to charge under such Agreements. (*See* Polier Affidavit at ¶ 7, Ex. 3; Liles Affidavit at ¶ 6, Ex. 4.)

When Defendants began interfering with the Agreements, they were aware of PharMerica's business practices and pharmacy contracts based on Russell's former employment. Defendants knew that PharMerica would be harmed financially by their improper interference with PharMerica's Agreements. They cannot pretend that they did not intend their actions (preventing PharMerica from receiving payment for medicines and services as agreed with its

---

[2] Russell was a General Manager at one of PharMerica, Inc.'s Arizona pharmacies before PharMerica, Inc. merged with Kindred Pharmacy Services to become PharMerica Corporation.

3

customers) to cause damage in Illinois, as well as the other states in which the facilities PharMerica is servicing are located. (*See* Coletti Affidavit at ¶ 8, Ex. 2; Liles Affidavit at ¶ 7, Ex. 4.) Defendants knew that they could be haled into a court in Illinois to answer for their improper actions.

## ARGUMENT

**I.  This Court Has Personal Jurisdiction Over the Defendants Because They Knowingly Targeted Clare Oaks by Wrongfully Urging It to Breach and Terminate Its Agreement with PharMerica.**

Defendants concede that Illinois' "long-arm" statute, 735 ILCS 5/2-209(c), is intended to "reach as far as the limits" prescribed by the Due Process Clause of the United States Constitution. (Motion at p. 4.) Defendants' sole argument is that their alleged lack of a business or personal presence in Illinois prevents this Court from exercising personal jurisdiction over them. Assuming only for purposes of argument that the contents of the Defendants' affidavits are true,[3] the motion to dismiss should be denied because there is compelling evidence to support the exercise of *specific* personal jurisdiction since PharMerica's cause of action "arises out of or [is] related to . . . minimum contacts that sufficiently comport with fairness and justice." *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000).

**A.  The Effects Test Is Used To Determine Whether Specific Personal Jurisdiction Over a Non-Resident Defendant Is Appropriate.**

The question presented in this case is whether tortfeasors based in Arizona who knowingly target PharMerica by wrongfully persuading Clare Oaks, as well as other PharMerica

---

[3] Defendants purport to establish the lack of contact and presence they and their business have with the Illinois in order to establish the lack of a *general* basis for personal jurisdiction. Since there is a sufficient basis for *special* jurisdiction over the Defendants, there is no need at this time to take discovery regarding support for *general* jurisdiction. Furthermore, *Susan Polier's affidavit contradicts Defendants' statements that they have not solicited or transacted business in Illinois* since she discusses multiple phone conversations and e-mails with Defendants, as well as Defendants entering into a contract with Clare Oaks. (Polier Affidavit at ¶¶ 4-5, Ex. 3.)

4

customers, to breach and/or terminate their agreements with PharMerica, "purposefully availed [themselves] of the privilege of conducting activities in the forum state [Illinois]" that "[they] should reasonably anticipate being haled into court there." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). The constitutional limits of due process in exercising jurisdiction over non-residents are based upon "notions of fair play and substantial justice." *International Shoe v. Washington*, 326 U.S. 310, 316 (1945). Where jurisdiction is not premised on general grounds (continuous and systematic contacts), the Illinois courts have used the "effects doctrine" to evaluate whether specific jurisdiction exists. Under this doctrine, jurisdiction is proper when Defendants' intentional tortious actions aimed at Illinois cause harm to PharMerica in the forum state, Illinois, and Defendants know such harm is likely to be suffered. *See Calder v. Jones*, 465 U.S. 783, 788-790 (1984); *Janmark, Inc. v. Reidy*, 132 F. 3d 1200, 1202 (7th Cir. 1997). In this case, the evidence demonstrates that Defendants solicited and obtained Clare Oaks' business via telephone calls and e-mail communications with Clare Oaks in Barlett, Illinois to further their scheme. *See FMC Corp. v. Varonos*, 892 F.2d 1308, 1311-13 (7th Cir. 1990) (holding that a non-resident's mailing or telephone calls combined with an intent to affect Illinois interests are a sufficient basis for jurisdiction).

      B.      **PharMerica Has Established a Prima Facie Case Of Jurisdiction in This Court.**

PharMerica is only required to make a prima facie case of jurisdiction when the Court decides the personal jurisdiction issues solely on the basis of written submissions. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The burden is on PharMerica to prove that jurisdiction exists; however, this Court must view the evidence relating to these factors in a light most favorable to PharMerica as the non-moving party and must take all well-pleaded allegations made in the complaint as true for purposes of this motion

5

unless contested by the Defendants' affidavits. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir. 1987), *superseded on other grounds*. The affidavits tendered by PharMerica, at a minimum, demonstrate genuine factual disputes concerning Defendants' allegations that they did not have substantial contact with Illinois; therefore, all disputed facts must also be construed in PharMerica's favor. *See Logan Products, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996).

### 1. The Defendants' Knowing Targeting of Clare Oaks Created a Substantial Connection With This Forum.

Defendants purposefully availed themselves of jurisdiction in Illinois because their contacts with Illinois "proximately result from actions by the defendant[s] [themselves] that create a 'substantial connection' with the forum State," and the Defendants' conduct and connections with the forum are such that they "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Where personal jurisdiction is premised on an intentional tort causing injury in the forum state – as is the case here – the Supreme Court applies the "effects" doctrine to determine whether the defendant has "purposefully" caused a "consequence" in the forum state. *See Calder v. Jones*, 465 U.S. 783 (1984). The Seventh Circuit has interpreted the "effects" doctrine broadly. *See Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997). The Seventh Circuit recognizes that conduct of the kind engaged in by the Defendants is more than enough to establish "purposeful availment."

#### a. The *Seventh Circuit* applies the "effects" doctrine in *Janmark*.

In *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997), the plaintiff, a seller of mini shopping carts, filed a complaint seeking a declaratory judgment that it had not infringed on a competitor's copyright. *Janmark*, 132 F.3d at 1201-02. The plaintiff alleged that the California

6

defendants placed a telephone call to one of the plaintiff's customers in New Jersey which caused the customer to cease buying shopping carts from the plaintiff. *Id*. at 1202. The lower court concluded that it did not have personal jurisdiction over the California defendants. *Id*. at 1201. The Seventh Circuit reversed this ruling, however, by reasoning "the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor" even if all other relevant conduct took place outside the forum state because the location of the tortious injury is critical to understanding where the tort occurred. *Id*. at 1202. Essentially, because the injury took place in Illinois (when the customer who received the defendant's phone call cancelled its order with the plaintiff), the tort occurred in Illinois and was actionable in Illinois. *Id*. at 1203. Many district courts in the Seventh Circuit, including the Northern District of Illinois, have concluded that an injury in Illinois is sufficient to confer personal jurisdiction on out-of-state defendants. *See, e.g.*, *Medallion Products, Inc. v. H.C.T.V., Inc.*, 2007 U.S. Dist. LEXIS 78623 (N.D. Ill Oct. 18, 2007) (court had personal jurisdiction over defendants where the defendants' alleged tortious activities had direct effects on companies located in Illinois), attached as Appendix A.

> b. **"Effects" doctrine applied to tortious interference with contract claims in *TEKsystems, Inc.***

In *TEKsystems, Inc. v. Modis, Inc., et al.*, 2008 U.S. Dist. LEXIS 98835 (N.D. Ill. Dec. 5, 2008), attached as Appendix B, this District addressed the application of the "effects" doctrine to a tortious interference with contract claim involving two competitors in the information technology and communications consulting services and staffing fields. In this case, plaintiff, TEKsystems, sued its former employee for breach of his employment agreement, misappropriation of trade secrets, and tortious interference with TEKsystems' contractual relationships (for using TEKsystems' client databases while working for his new employer, one

of plaintiff's competitors.) *Id*. at \*\*1-3. Defendant argued that TEKsystems could not establish personal jurisdiction over him because Defendant never lived or worked in Illinois and had minimal contact with the state. *Id*. at \*6.

Relying on *Calder* and *Janmark,* this District found that personal jurisdiction was appropriate. With respect to tortious interference, it found that defendant had sufficient minimum contacts with Illinois based on defendant's solicitation of a breach of an employment contract and the resulting injury suffered by TEKsystems in Illinois. The Court believed that under these circumstances, "it was foreseeable that [defendant] would be required to answer for his alleged conduct in Illinois." *Id.* at \*\*8-11. The Court dismissed defendant's argument that "he had no intent to affect any Illinois interest because his telephone calls to Illinois did not involve misrepresentations." *Id*. It found that defendant's argument "ignores TEKsystems' allegations – that [employee] intentionally and unjustifiably interfered with [an] employment agreement" through solicitation and encouragement to misappropriate trade secrets. Therefore, "TEKsystems' allegations establish an intent to affect an Illinois interest." *Id*.

### c. Application of *Calder*, *Janmark* and *TEKsystems* to Defendants' efforts to interfere with PharMerica's Agreements.

*Calder, Janmark,* and *TEKsystems* are instructive in this case because they address the intentional targeting of business relations, with full knowledge that the victim bases its business in the forum state where the harm caused by their tortious actions will be sustained. PharMerica has pharmacies in all states where its facilities are located. Harm caused by Defendants' tortious actions will be sustained by PharMerica's pharmacies.

Like the defendants in *Calder, Janmark,* and *TEKsystems*, AHS/MedWise used their special knowledge of PharMerica acquired through prior business relationships and work in the same field of business to prey upon PharMerica's customers and urge them to terminate their

8

Agreements with PharMerica. Although Clare Oaks has not rescinded its purported termination, PharMerica is still providing the Illinois facility with pharmacy services – however, Clare Oaks has failed to pay PharMerica for medicines and services totaling almost $300,000. (Coletti Affidavit at ¶ 7, Ex. 2.) PharMerica's Bensenville, Illinois pharmacy has sustained these losses. (*Id.* at ¶ 8.)

The complaint alleges and the affidavits demonstrate that Defendants advised Clare Oaks and The Village at Germantown to improperly terminate their contracts with PharMerica while knowing that PharMerica maintained pharmacies in each of the states in which they serviced facilities and that such breach would affect the pharmacies, as well as PharMerica as a whole. (Polier Affidavit at ¶ 7, Ex. 3; Liles Affidavit at ¶ 7, Ex. 4.) Defendants argue that this Court does not have personal jurisdiction over them due to a lack of physical or business presence in Illinois – but ignore their e-mails and phone calls with Susan Polier, the former Administrator of Clare Oaks in Barlett, Illinois, part of Defendants' coordinated plan to terminate a series of PharMerica Agreements. (Polier Affidavit at ¶¶ 4 and 7, Ex. 3.) The Defendants' contacts with Illinois are not "fortuitous," "random" or "attenuated." *Burger King Corp.*, 471 U.S. at 475. Defendants have purposefully caused substantial consequences in Illinois.

### 2. PharMerica's Cause of Action Arises from Defendants' Activities in Illinois.

Defendants persuaded Clare Oaks – an Illinois facility – to allow them to impose formulary management, pricing, adjudication, and the utilization of the MedWise PBM by the pharmacy selected to fill prescriptions while Clare Oaks was still under contract with PharMerica. (Polier Affidavit at ¶¶ 4-5, Ex. 3; Exhibit A to Complaint.)[4] They solicited Clare Oaks' business via phone calls and e-mails to Illinois and tortiously interfered with PharMerica's

---

[4] Defendants entered into a similar contract with The Village in Germantown, Tennessee. (*See* Complaint at Exhibit B.)

contract with Clare Oaks by directing Susan Polier, the Administrator of Clare Oaks at the time, to terminate its Agreement with PharMerica in an attempt to renegotiate costs with PharMerica or find a new pharmacy to service the facility. (Polier Affidavit at ¶¶ 4-7, Ex. 3.) Like *Janmark*, Defendants' out-of-state actions (sending communications to Illinois and contracting with Clare Oaks) resulted in an injury *in* Illinois when Clare Oaks terminated its contract with PharMerica.

> 3. **Illinois' Exercise of Jurisdiction Is Reasonable and Foreseeable In Light of Defendants' Acts and Injuries Caused in Illinois.**

While defendants have engaged in similar activities in other states, PharMerica is owed approximately $300,000 from non-payment for medicines and services provided to Clare Oaks since Defendants instructed the facility to terminate its contract. (Colletti Affidavit at ¶ 7, Ex. 2.) Defendants assert that they did not perform any acts that caused an injury in Illinois and that they did not have "an intent to affect an Illinois interest." (Motion at p. 8 and Exhibits A-B.) This is simply false. PharMerica has a pharmacy in Bensenville, Illinois that services Clare Oaks, as well as other local facilities. (Colletti Affidavit at ¶¶ 2-3, Ex. 2.) Using this District's analysis in *TEKsystems*, it is clear that that Defendants intentionally and unjustifiably interfered with PharMerica's Agreement with Clare Oaks through solicitation of Clare Oaks' business and direction to Clare Oaks to breach its Agreement with PharMerica. (Polier Affidavit at ¶¶ 5-9, Ex. 3.) Therefore, like the plaintiff in *TEKsystems,* PharMerica's complaint and affidavits tendered in support of this motion establish that Defendants intended to affect an Illinois interest so the exercise of jurisdiction by this Court is foreseeable.

II. **The United States District Court for the Northern District of Illinois Is the Proper Venue for this Action.**

Transferring this case to the United States District Court for Arizona would *not* "serve the convenience of the parties and witnesses as well as the interests of justice." *Sanders v. Franklin*,

10

25 F. Supp.2d 855, 857 (N.D. Ill. 1998) (explaining the requirements for transferring venue). The Northern District of Illinois is equally convenient for all parties. Further, there are principal witnesses and material evidence in Illinois, including, but not limited to, the following non-party witnesses: Susan Polier, Former Clare Oaks Administrator, and Brian Nebel, Former Executive Director of Clare Oaks.

Though neither the Defendants nor PharMerica are principally located in Illinois, they each conduct business in Illinois and have already obtained local counsel. While there will inevitably be some inconvenience based on parties and witnesses being located in different places, Defendants have not, and cannot, present evidence that the convenience of the parties and witnesses would be better served, on the whole, by a move to the District of Arizona – especially since the primary non-party witnesses in this case are located in Illinois. In the interest of fairness, PharMerica should not be forced to seek redress for its claims against Defendants in Arizona.

"The balance must weigh strongly in the defendant's favor before a plaintiff's choice of forum is disturbed." *Clearclad Coatings, Inc. v. Xontal Ltd.*, 1999 U.S. Dist. LEXIS 13173 at *26 (N.D. Ill. Aug. 20, 1999) (citing United Air Lines, Inc. v. Mesa Airlines, Inc., 8 F. Supp.2d 796, 798 (N.D. Ill. 1998)), attached as Appendix C. A transfer of a case to another district which "only shift[s] the burden from one party to the other" is "an insufficient basis for transfer." *Id.* at *29. PharMerica's choice of forum should be given great weight as the Court considers whether to transfer venue under §1404(a); the right to choose a forum should not be taken away through judicial action simply because Arizona better suits the Defendants. Further, this Court has an interest in insuring that PharMerica, which does business in Illinois through its Bensenville, Illinois pharmacy, has unfettered access to the court system to address Defendants' tortious

interference with its Clare Oaks Agreement.

### III. Sufficiency of Allegations Stated in the Complaint

PharMerica's complaint adequately pleads a claim for tortious interference with a contract or business relations.

#### A. Improper Conduct

A complaint is sufficient as long as it contains a short and plain statement of the claim showing the pleader is entitled to relief and describing the relief sought. Fed. R. Civ. P. 8(a); CR 8.01(1). More detailed pleadings are not required under Illinois' notice-pleading rules. *James v. Int'l Hotels Group Res., Inc.*, 2010 U.S. Dist. LEXIS 11593 (N.D. Ill. Feb. 10, 2010) (discussing *Iqbal*), attached as Appendix D. Under Illinois law, the plaintiff must plead and prove: (1) a valid and enforceable contract; (2) defendant's awareness of the contractual relationship; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach. *Dallis v. Don Cunningham & Assocs.*, 11 F.3d 713, 717 (7th Cir. 1993). Each of these elements is fully pleaded in the complaint.

Contrary to Defendants' arguments, PharMerica's complaint does the following: (1) specifies that Defendants' interference was "improper" and incorporates termination letters from Clare Oaks and the Village at Germantown that reference the AHS/MedWise contracts for pharmacy consulting services Defendants improperly induced Clare Oaks and The Village at Germantown to sign (*See* Complaint at ¶¶ 1, 30 and 33 and Exhibits A and B); (2) alleges that Defendants performed an act that caused injury in Illinois and intended to effect an Illinois interest pursuant to *Real Colors, Inc. v. Patel*, 974 F.Supp. 645, 649-650 (N.D. Ill. 1997); and (3) alleges sufficient facts to support personal jurisdiction pursuant to *Met-L-Wood Corp. v. SWS*

*Indus., Inc.*, 594 F.Supp. 706 (N.D. Ill. 1984). Therefore, Defendants are on notice of the basis for PharMerica's claims.

Finally, there is no privilege or justification that allows Defendants to interfere with PharMerica's customers' performance under their respective contracts since they are *not* terminable at will. *See Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865 (7th Cir. 1999) (demonstrating that the "competitor's privilege" does not privilege inducing the breach of a contract that is not terminable at will); *Enesco Corp. v. K's Merchandise Mart, Inc.*, No. 99-C1070, 2000 U.S. Dist. LEXIS 17326 at *29-30 (N.D. Ill. Aug. 29, 2000) (holding that the affirmative defense of competition does not apply to a claim for tortious interference with contractual relations), attached as Appendix E.

**B.     Damages**

Defendants incorrectly assert that PharMerica cannot maintain a cause of action because "no termination is alleged" and there are no damages alleged. (Motion at pp. 11-12.) This is incorrect on both counts. PharMerica has alleged breach, attempted termination and damages. PharMerica, unsurprisingly, refused to accept Clare Oaks' and The Village at Germantown's early terminations without cause. As a result, PharMerica is providing the pharmacy services that the customers require by law to operate; however, significant amounts are due and owing under its Agreements.

The amount in controversy at this time includes, but is not limited to: (1) amounts due for pharmacy services provided and invoiced to Clare Oaks, currently totaling $294,362.41; (2) amounts due for pharmacy services provided and invoiced to The Village at Germantown under its agreement with PharMerica; and (3) amounts due from the "Additional Current PharMerica Customers" (American Baptist Home of the West d/b/a San Joaquin Gardens; Foothill Care

13

Center, LLC for Apache Junction Health Care; Ridgecrest Healthcare; and SRCV-Rosa LLC d/b/a Santa Rosa Health Care Center).[5] (*See* Coletti Affidavit at ¶ 7-8, Ex. 2.) More discovery is needed, however, before PharMerica can specifically quantify its damages.[6]

The correspondence received from Clare Oaks and The Village at Germantown (*see* Complaint at Exhibits A and B) indicate that their facilities intend only to use PharMerica's services on a month-to-month basis until negotiations are complete with Defendants, and that they have no intention of continuing to pay PharMerica what it is due for the full term of the Agreements. These customers have not rescinded their notices of termination or asserted that they have "changed their minds" and will now comply with their Agreements. While PharMerica is currently servicing the customers Defendants interfered with and improperly influenced, PharMerica has not received any proof or support that these facilities are planning to honor their contracts until their respective end dates. Further, PharMerica has no guarantee that Defendants will not continue to interfere. (Coletti Affidavit at ¶ 6, Ex. 2; Liles Affidavit at ¶ 8, Ex. 4.)

## CONCLUSION

PharMerica has made a prima facie showing – unrebutted by Defendants – that the exercise of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. Defendants have failed to demonstrate that PharMerica's complaint is inadequately pleaded. Therefore, Defendants' motion to dismiss and alternative motion to

---

[5] No tortious interference allegations have been made by PharMerica relating to the "Transitioning PharMerica Customers" (American Baptist Homes of the West d/b/a Rosewood Health Center, American Baptist Homes of the West d/b/a Valle Verde Retirement Community and SRCV-Haven LLC d/b/a Desert Haven Care Center). They terminated their contracts with PharMerica pursuant to the negotiated terms. This category of customers was referenced in the complaint to provide the Court with context – not to increase the amount of damages claimed by PharMerica. Therefore, Defendants' assertion that this reference is "an additional threat" is unfounded.

[6] For example, there are nine months left in PharMerica's Agreement with Clare Oaks. It is yet to be determined whether Clare Oaks will continue to accept PharMerica's pharmacy services through the end of the Agreement's term *and* whether it will pay for those services or continue to add to the almost $300,000 currently owed to PharMerica.

transfer venue should be denied.

        Respectfully submitted,

        s/ Shomshon Moskowitz
        Carl L. Popovsky
        Shomshon Moskowitz
        Stein, Ray & Harris LLP
        222 West Adams Street, Suite 1800
        Chicago, IL 60606
        Telephone: (312) 516-2008
        clp@steinrayharris.com
        (Local Counsel)

        and

        Philip W. Collier (*pro hac vice* motion pending)
        Whitney Frazier Watt (*pro hac vice* motion pending)
        STITES & HARBISON, PLLC
        400 West Market Street, Suite 1800
        Louisville, KY 40202-3352
        Telephone: (502) 587-3400
        pcollier@stites.com
        (Lead Counsel)

## CERTIFICATE OF SERVICE

    I hereby certify that on this 11th day of March, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| S. Anthony Tunney | Charles D. Onofry, Esq. |
| HEPLERBROOM, LLC | SCHNEIDER & ONOFRY, P.C. |
| 150 North Wacker Drive, Suite 3100 | 3101 North Central Avenue |
| Chicago, IL 60606 | Suite 600 |
| tony.tunney@heplerbroom.com | Phoenix, AZ 85012-2658 |
| *Counsel for Defendants* | conofry@arizonalaw.com |
| | *Counsel for Defendants* |

        s/ Shomshon Moskowitz
        Counsel for Plaintiffs

776898:1