IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHARMERICA CORP., PHARMERICA LONG TERM CARE, INC., PHARMERICA MOUNTAIN, INC., and the PHARMACY CORPORATION OF AMERICA, <br><br> Plaintiffs, <br><br> v. <br><br> ADVANCED HEALTHCARE SOLUTIONS, LLC., ANDREW S. LENICK, MEDWISE GPO, INC., and C. SCOTT RUSSELL, <br><br> Defendants. | Case No. 10 C 349 <br><br> Judge Virginia M. Kendall |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs PharMerica Corporation, PharMerica Long Term Care, Inc., PharMerica Mountain, Inc., and the Pharmacy Corporation of America (collectively "PharMerica") filed suit against Defendants Advanced Healthcare Solutions, LLC ("AHS"), Andrew S. Lenick ("Lenick"), Medwise GPO, Inc. ("Medwise"), and C. Scott Russell ("Russell") (collectively "Defendants"). PharMerica alleges that the Defendants tortiously interfered with its contractual relationships with certain healthcare facilities. Defendants have moved to dismiss PharMerica's Complaint for lack of personal jurisdiction and failure to state a claim upon which relief may be granted, or alternatively to transfer this action to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1404(a). Andrew S. Lenick and Advanced Healthcare Solutions were not initially served, but now move to join the other Defendants in the present Motion. The Court grants the Motion to Join in the Motion to Dismiss; however, for the reasons stated below, Defendants' Motion to Dismiss or Transfer Venue is denied.

**STATEMENT OF FACTS**

The following facts are taken from PharMerica's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The Plaintiffs are Delaware and California corporations is in the business of supplying institutional healthcare facilities with pharmaceuticals and pharmacy and consulting services, with their principal place of business in Louisville, Kentucky. (Compl. ¶ 2.) Defendants AHS and Medwise are Arizona corporations that provide consulting and billing services for long-term care facilities. (Compl. ¶¶ 4, 6.) Lenick is the President of AHS. (Compl. ¶ 5.) Russell is the sole director and principal shareholder of Medwise and a former PharMerica General Manager. (Compl. ¶ 7.)

This suit arises from two contracts (the "Agreements") between PharMerica and certain of its customers, which provided for the supply of prescription drugs, pharmacy supplies and consulting services. Compl. ¶ 15.) On December 14, 2007, CRSA Management, LLC ("CRSA") entered into an agreement with PharMerica for the provision of supplies and services to a facility in Bartlett, Illinois (Compl. ¶¶ 3, 13.) On October 10, 2005, the Village of Germantown, Inc., a Tennessee healthcare facility managed by CRSA, entered into an agreement with PharMerica relating to the Germantown facility. (Compl. ¶¶ 3, 14.) Subsequently, both CRSA and the Village of Germantown issued notices to terminate the Agreements. (Compl. ¶¶ 16-18.) The terminations did not comply with contractual provisions, resulting in a breach of the terms and conditions of the Agreements. (Compl. ¶ 22.)

PharMerica alleges that the Defendants knowingly induced CRSA to terminate and breach the Agreements by offering CRSA reductions in the price of goods and services, and that CSRA

2

acted in reliance on these statements. (Compl. ¶ 19.) PharMerica also alleges that the Defendants interfered with other agreements, advising certain of PharMerica's other customers to breach their agreements, although those customers did not breach their contracts with PharMerica. (Compl. ¶ 26.) Finally, PharMerica alleges that the Defendants convinced other PharMerica customers, located in California and Arizona, not to continue their agreements, although the contracts with those customers were not breached. (Compl. ¶ 27.) PharMerica alleges that it suffered damages due to loss of payments on services provided and for services that would have come due. (Compl. ¶ 33.)

## DISCUSSION

### I. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

In reviewing a motion to dismiss for lack of personal jurisdiction, the Court accepts all well-pleaded factual allegations in the Complaint as true unless controverted by affidavits outside the pleadings, which the Court may consider. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). Factual disputes are construed in the plaintiff's favor. *See Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). When a defendant challenges the court's exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004). Where, as here, the Court decides a motion challenging jurisdiction on the basis of written submissions, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

A federal court sitting in diversity jurisdiction, as is the case here, has personal jurisdiction only if a court in the state in which it sits would have jurisdiction. *See RAR, Inc. v. Turner Diesel,*

*Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). "[A] federal court borrowing a state jurisdictional statute may acquire personal jurisdiction only to the extent that the state law authorizes service of process." *Hyatt Int'l.*, 302 F.3d at 713. The Illinois long arm statute that governs here permits the exercise of jurisdiction "on any basis permitted by the Illinois and United States constitutions." *See* 735 ILCS 5/2-209(c). Although the due process provisions of the Illinois and United States Constitutions are not identical, "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l.*, 302 F.3d at 715.

Personal jurisdiction is proper, therefore, only if the defendant has "minimum contacts" with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction may be either general or specific. *See Helicopteros Nationales de Columbia v. Hall*, 466 U.S. 408, 414 (1984). In this case, PharMerica argues that the Court has specific jurisdiction over the Defendants.

Specific jurisdiction allows the Court to exercise jurisdiction over a defendant whose contacts with the forum state are limited, as long as those contacts are of a nature and quality as to give the defendant fair warning that he could be required to defend a suit there. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Central States, Se. & Sw. Areas Pension Fund. v. Reimar Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). In determining whether specific jurisdiction exists over an out-of-state defendant, the Court must determine whether the minimum contacts between the defendant and the forum state demonstrate that the defendant "purposefully availed itself of the privilege of conducting activities" in the forum state such that it "should reasonably anticipate being haled into court" there. *RAR*, 107 F.3d at 1277. The Court focuses on

4

"the relationship among the defendant, the forum, and the litigation." *Heritage House Rests., Inc. v. Cont'l Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir. 1990). The main factor in the minimum contacts analysis is not physical presence in the forum state but rather "foreseeability." *Id.*

In this case, PharMerica alleges that the Defendants, when they induced CRSA to breach their agreement for the Illinois Clare Oaks facility, should have reasonably anticipated being haled into court in Illinois to answer for the effects of their conduct. The "effects doctrine" allows courts to exercise personal jurisdiction over a nonresident defendant when the defendant's intentional tortious actions aimed at the forum state cause harm to plaintiff in the forum state, on the grounds that the defendant's actions with respect to the forum state constitute fair warning of potential liability in the courts of that state. *See Calder v. Jones,* 465 U.S. 783, 788-90 (1984). The doctrine permits the state in which the injury (and therefore the tort) occurred to entertain the suit, even if all other relevant conduct occurred outside the state. *See Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202-03 (7th Cir. 1997).

Plaintiffs rely upon *TEKsystems v. Modis, Inc.* in support of the application of the effects doctrine in this case. 08 C 5476, 2008 WL 5155667, at *1(N.D. Ill. Dec. 5, 2008) (Conlon, J.). In *TEKsystems*, the plaintiff brought suit against a former employee for, amongst other things, tortious interference with contractual relationships. *See id.* at *1-3. The defendant countered that the court lacked personal jurisdiction because he never lived or worked in Illinois, and had only minimal contact with the state. *Id.* at *2. The district court determined that personal jurisdiction was appropriate, finding that the defendant had solicited an Illinois resident to breach his employment relationship with an Illinois company and had otherwise caused an injury in Illinois for which the defendant could have foreseen he would be liable. *Id.* at *3. This is a factual scenario similar to that

5

at issue here, where the Defendants have minimal contacts with Illinois but those contacts consist of soliciting an Illinois facility to breach its contract with PharMerica and cause PharMerica to lose income and profits that would have accrued through its Illinois pharmacy location.

Defendants contend, however, that because any damage suffered here is solely economic in nature, PharMerica must overcome additional hurdles. Relying upon *Real Colors, Inc., v. Patel*, Defendants argue that PharMerica must allege that the Defendants committed an act that caused injury in Illinois, and that the Defendant intended to affect an Illinois economic interest. *See* 974 F.Supp. 645, 649 (N.D. Ill. 1997). PharMerica has satisfied this requirement by alleging that the Defendants contacted CRSA, located in Illinois, and induced them to breach their agreement with PharMerica to provide products and services to an Illinois facility, and that damages were suffered damage as a result of that interference. The fact that Defendants initiated the transaction with CRSA in Illinois, and that the alleged tort was committed through a series of emails and phone calls from Defendants to the Illinois facility, is relevant to a finding of personal jurisdiction. *See Heritage House Rests.*, 906 F.2d at 283.

If Defendants committed a tortious act that interfered with PharMerica's contractual relationship with CRSA's Illinois facility, that act was committed within Illinois and affected Illinois interests. Accordingly, PharMerica has established a *prima facie* case that specific jurisdiction may be exercised. Therefore, personal jurisdiction over the Defendants in the Northern District of Illinois is proper, and the Motion to Dismiss for lack of personal jurisdiction is denied.

**II. Defendants' Motion to Dismiss for Failure to State a Claim**

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See*

*Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950. A claim has facial plausibility when the factual content in the pleadings allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.*

In order to establish a *prima facie* tortious interference with contractual relationships claim in Illinois, a plaintiff must allege (1) the existence of a valid and enforceable contract; (2) defendant's awareness of the contractual relationship; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages. *See Prince v. Zazove,* 959 F.2d 1395, 1397 (7th Cir. 1992) (citations omitted). In this case, Defendants argue that PharMerica has failed to plead facts that indicate that they engaged in any improper conduct, and that PharMerica suffered no damages. However, PharMerica has alleged that the Defendants knowingly induced CRSA to terminate and breach its contract with Pharmerica, by offering CRSA reductions in the price of goods and services, and that CRSA acted in reliance on these statements. (Compl. ¶ 19.) PharMerica has also alleged that it suffered damages due to loss of payments on services provided and services that would have come due. (Compl. ¶ 33.) Taking all of these facts as true, as is proper

7

at this stage, it is clear that PharMerica has stated a plausible claim of tortious interference with contractual relationships.

**III. Defendants' Motion to Transfer**

Finally, the Defendant's move, pursuant to 28 U.S.C. § 1404(a), to transfer this case to Arizona. Section1404(a) provides that: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The inquiry is thus whether transferring this case would increase the convenience of the parties and witnesses and advance the interests of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

In determining whether this case should be transferred for the convenience of the parties and witnesses, this Court should consider "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). This Court is vested with a great deal of discretion in weighing these factors, and the decision to transfer must be made on a case-by-case basis. *See Coffey,* 796 F.2d at 219. The Court, however, may not transfer a case for the convenience of one party's witnesses at the expense of the other party's witnesses. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir. 1989). Generally, the plaintiff's choice of forum is rarely disturbed unless the balance of all factors is strongly in favor of the defendant. *See In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 664-65 (7th Cir. 2003).

Here, PharMerica has several witnesses located in Illinois, including the individuals who were the administrator and executive director of the CRSA facility at the relevant times. Defendants

do not name specific witnesses, but merely argue that the Defendants are located in Arizona and that more of the customers identified in PharMerica's Complaint are located in Arizona than elsewhere. However, although the Complaint alleges that Defendants have interfered with PharMerica's relationships with other customers, including those located in Arizona, the alleged tortious interference with contract involves only two customers, one of whom is located in Illinois. None of the parties are based in Illinois, and all have obtained local counsel. Thus, analysis of this factor indicates that a transfer to Arizona is not warranted, because it would only inconvenience PharMerica's witnesses and disturb its choice of forum in order to improve convenience for the Defendants themselves. *See Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1259 (7th Cir. 1997) (transfers under § 1404(a) should not merely "shift the convenience from one party to another").

The "interests of justice" component of § 1404(a) focuses on the efficient and fair administration of the courts rather than on the litigants. *See Coffey,* 796 F.2d at 220. In making a determination under this component, this Court should consider the relative speed with which the case will go to trial, the familiarity of the judge with the applicable law, the relationship of the parties and claims to the forum, and access to sources of proof. *See Heller Fin.*, 883 F.2d at 1293.

Two statistics bear significant relevance when analyzing the likelihood of a speedy trial. *See Tingstol v. Co. v. Rainbow Sales, Inc.*, 18 F. Supp. 2d 930, 934 (N.D. Ill. 1998). The first is the median number of months from filing to disposition, and the second is the median number of months from filing to trial. *See id.* According to the 2009 Federal Court Management Statistics, the median

9

number of months from filing to deposition in the Northern District of Illinois is 6.2 months, compared to 8.1 for Arizona. *See* Fed. Ct. Mgmt. Statistics, *available at* http://www.uscourts.gov/fcmstat/index.html. Similarly, the median number of months between filing a civil action and going to trial in the Northern District of Illinois is 27.8 months, compared to 29 months in Arizona. *See id*. Therefore, the likelihood of a speedy trial factor slightly favors the Northern District of Illinois.

The familiarity of this Court with the Illinois state law to be applied also favors the maintenance of venue here, as does Illinois's significant interest in protecting the contractual relationships of its businesses. On the whole, therefore, the "interests of justice" component reinforces the Court's conclusion that this matter should remain in the Northern District of Illinois. Because the balance of factors here does not weigh in the Defendants' favor, the Court will not disturb PharMerica's choice of forum. Defendants' Motion to Transfer Venue is therefore denied.

## CONCLUSION AND ORDER

PharMerica has adequately presented a *prima facie* case supporting personal jurisdiction over the Defendants in the Northern District of Illinois. PharMerica has also stated a sufficient claim of tortious interference with its business contracts upon which relief may be granted. Finally, after weighing the relevant factors under 28 U.S.C. § 1404(a), the Court finds that PharMerica's choice to litigate its claims in this Court should not be disturbed. Defendants' Motion to Dismiss or to Transfer Venue is denied in its entirety.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 5, 2010